1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANNA OMELIN, Individually and as an Administrator of the Estate of Anton Omelin, deceased,　　　　　　　　　　　　　　　　　　　） ） ） ） | Case No. 3:17-cv-05837 |
| 　　　　　　　　Plaintiff,　　　　　　） ） | **COMPLAINT FOR DAMAGES** |
| vs.　　　　　　　　　　　　　　　　　） ） ） | 1) Strict Product Liability – Design Defect; Failure to Warn; |
| HANSEN BEVERAGE COMPANY d/b/a MONSTER BEVERAGE CORPORATION, a Delaware Corporation, MONSTER ENERGY COMPANY, a Delaware Corporation, and RED BULL NORTH AMERICA, INC., a Foreign Corporation, and DOES 1 through 100, Inclusive,　　　　　　　　　　　） ） ） ） ） ） ） ） ） ） | 2) Negligence – Design, Sale, Manufacturing; Failure to Warn; 3) Fraud - Concealment, Suppression or Omission of Material Facts; 4) Breach of Implied Warranties; and 5) Wrongful Death |
| 　　　　　　　　Defendants.　　　　） | **JURY DEMAND** |

COMES NOW, Plaintiff ANNA OMELIN, Individually and as Administrator of

the Estate of ANTON OMELIN, deceased, by and through her attorney of record, Olga

Efimova, hereby files this complaint against Defendants, and respectfully alleges as

follows:

COMPLAINT FOR DAMAGES- 1
Case No. 3:17-cv-05837

## I.  NATURE OF THE CASE AND PARTIES

1.      Plaintiff, ANNA OMELIN (hereinafter "Plaintiff"), brings the present survival and wrongful death action, pursuant to Revised Code of Washington (hereinafter "RCW") 4.20.010-.020; 4.20.046 and 4.20.60, individually and on the behalf of the Estate of ANTON OMELIN, deceased, for personal injuries suffered as a result of the Mr. Omelin's death on October 30, 2014.

2.      The heirs at law of the decedent under RCW 4.20.010-.020 and their relationship to Mr. Omelin are as follows: 1) ANNA OMELIN, decedent's spouse; 2) A. S., decedent's step-son, a minor; 3) A. O., decedent's daughter, a minor; 4) A. O., decedent's son, a minor. At all relevant times, Plaintiff and heirs resided, and continue to reside, at 4219 69th Ave. E, Fife, WA 98424.

3.      HANSEN BEVERAGE COMPANY d/b/a/ MONSTER BEVERAGE CORPORATION (hereinafter referred to as "MONSTER"), a defendant, is a Delaware corporation, with principle place of business at 550 Monica Circle, Suite 201, Corona, California, 92880. At all relevant times, Defendant engaged in and was responsible for design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of energy drinks, MONSTER ENERGY and NOS (hereinafter collectively referred to as "MONSTER BEVERAGES"). Defendant's registered agent CSC – Lawyers Incorporating Service is located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California, 95833.

4.      MONSTER ENERGY COMPANY (hereinafter referred to as "MONSTER"), a defendant, is a Delaware corporation, with principle place of business at 550 Monica Circle, Suite 201, Corona, California, 92880. At all relevant times, Defendant

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

engaged in and was responsible for design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of energy drinks, MONSTER ENERGY and NOS (hereinafter collectively referred to as "MONSTER BEVERAGES"). Defendant's registered agent CSC – Lawyers Incorporating Service is located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California, 95833.

5.   RED BULL NORTH AMERICA, INC. (hereinafter referred to as "RED BULL"), a defendant, is a foreign profit corporation, with principle place of business at 1740 Steward Street, Santa Monica, California 90404, USA. At all relevant times, Defendant engaged in and was responsible for design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of the energy drink, RED BULL (hereinafter referred to as "RED BULL ENERGY"). Defendant's registered agent C T Corporation System is located at 711 Capitol Way S, Ste. 204, Olympia, Washington 98501-1267.

6.   The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiff, as hereinafter alleged.

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

## II.  JURISDICTION AND VENUE

7.      Plaintiff brings this complaint under federal diversity jurisdiction under 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

8.      Venue is proper in the Western District of Washington at Tacoma, under 28 U.S.C. 1391(b), where Mr. Omelin and survivors resided and the death occurred.

## III. FACTUAL ALLEGATIONS

9.      In the early morning hours of October 30, 2014, Plaintiff found 25-year-old Anton Omelin in the bathroom unresponsive. There was vomit on the floor as well as in the bathroom sink. At the time medical personnel arrived at the scene, no life saving measures were taken, as the Mr. Omelin's death was obvious.

10.      In a 24-hour period preceding his death, Mr. Omelin consumed at least four (4) 16-oz cans of NOS and Red Bull energy drinks. Prior to and since his marriage to the Plaintiff, in the year of 2010, Mr. Omelin regularly consumed at least four (4) 16-oz cans of energy drinks per day, including MONSTER BEVERAGES and RED BULL ENERGY.

11.      Prior to his death, Mr. Omelin received the news that he will receive the full-ownership of the family business once his parents-in-law retire. Mr. Omelin purchased fruits, chocolate and a bottle of Courvoisier cognac to celebrate with Plaintiff. Prior to going to bed he had two to three (2-3) shots of cognac, which he mixed with RED BULL ENERGY.

12.      Mr. Omelin had no prior medical problems. He did not use illicit drugs and drank in moderation. Mr. Omelin consumed large quantities (at least four (4) a day) of energy drinks manufactured by the Defendants.

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

13.     A few days prior to his death, Mr. Omelin complained of headaches, however, he did not seek medical help, as the headaches were manageable.

14.     Mr. Omelin was the sole provider for his family. To stay awake to perform his work duties, Mr. Omelin consumed MONSTER BEVERAGES and RED BULL ENERGY on daily basis. Mr. Omelin lacked in sleep averaging only four to five (4-5) hours of sleep on weekdays and had insomnia on weekends.

15.     Prior to going to bed, Mr. Omelin had a habit of performing physical exercises, which he did in the bathroom, so he would not wake his wife and children.

16.     Mr. Omelin was survived by his wife, Anna Omelin; his stepson, A.S., a minor; his biological son, A.O., a minor; his biological daughter, A.O., a minor, who at the time of Mr. Omelin's death was six (6) weeks old.

17.     At all relevant times, HANSEN BEVERAGE COMPANY d/b/a/ MONSTER BEVERAGE CORPORATION was responsible for the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of MONSTER BEVERAGES that Mr. Omelin ingested prior to his death and from which he ultimately died.

18.     At all relevant times, MONSTER ENERGY COMPANY was responsible for the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of MONSTER BEVERAGES that Mr. Omelin ingested prior to his death and from which he ultimately died.

19.     At all relevant times, RED BULL NORTH AMERICA, Inc. was responsible for the design, manufacture, production, testing, study, inspection, mixture,

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

labeling, marketing, advertising, sales, promotion, and/or distribution of RED BULL ENERGY that Mr. Omelin ingested prior to his death and from which he ultimately died.

20.     HANSEN BEVERAGE COMPANY d/b/a MONSTER BEVERAGE CORPORATION, MONSTER ENERGY COMPANY and RED BULL NORTH AMERICA, INC., (hereinafter referred to as "MONSTER and RED BULL") target their advertising campaign "primarily towards young males, with alluring product names." Chad J. Reissig, *et.al.*, *Caffeinated Energy Drinks: A Growing Problem*, 99(1-3) DRUG ALCOHOL DEPEND. 4 (2009) [hereinafter, "DRUG ALCOHOL DEPEND.]. "These advertising campaigns promote the psychoactive, performance-enhancing, and stimulate effects of energy drinks and appear to glorify drug use." *Id.*

1.  RED BULL's advertising campaign slogan "Red Bull gives you wings," is associated with "excitement and risk-taking." In addition, RED BULL's marketing permeates the action sports world. Red Bull Paper Wings and the 'Gives You Wings' Slogan, http://www.businessinsider.com/red-bull-paper-wings-slogan-2012-10 (last visited October 12, 2017). RED BULL's primary targets are athletes, ***workers*** and socialites. Ad Campaign for Monster Energy, https://www.slideshare.net/LucyYe1/monster-energy-drinks-power-point (last visited October 12, 2017).

2.  MONSTER's marketing uses "product taglines like 'Unleash the Beast,' and its bold advertising campaigns reflect its edgy and aggressive image." Monster Beverage's Bold Marketing Approach, http://marketrealist.com/2015/01/monster-beverages-bold-marketing-approach/ (last visited October 16, 2017). MONSTER's "advertising and

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

marketing efforts are associated with adventure sports and sports personalities." *Id*. "The macho image, and the promotion of these drinks as an ***immediate energy booster***, made them the military's drink of choice." *Id*.  In the recent advertising campaign, MONSTER featured a famous boxer preparing for a match and declaring "I am the beast." Monster Energy TV Commercial, 'I Am the Beast' Featuring Conor McGregor, https://www.ispot.tv/ad/w6tq/monster-energy-i-am-the-beast-featuring-conor-mcgregor (last visited October 13, 2017).

21.    In 2015, RED BULL and MONSTER dominated energy drink market with respective market shares of 43% and 39%. Monster, Red Bull, Rockstar Ranked http://time.com/3854658/these-are-the-top-5-energy-drinks/ (last visited October 13, 2017). RED BULLS' sales of energy drinks increased by 1.8% from 2015-2016, capping the sales at 6.06 billions of cans sold worldwide in 2016, a dramatic 50% increase in sales since 2011. Number of Red Bull Cans Sold World Wide From 2011 to 2016, https://www.statista.com/statistics/275163/red-bulls-number-of-cans-sold-worldwide/ (last visited October 13, 2017). MONSTER's sales of energy drinks increased by 13% from 2015 to 2016, capping the sales at $3.5 billions in 2016, a 80% increase in sales since 2011. Monster Beverage Corporation, http://investors.monsterbevcorp.com/annuals.cfm (last visiting October 17, 2017).

22.    Substance Abuse and Mental Health Services Administration (SAMHSA) reported "the number of emergency department (ED) visits involving energy drinks doubled from 10,068 visits in 2010 to 20,783 visits in 2011." Substance Abuse and Mental Health Servs. Admin., *The Dawn Report: Update on Emergency Department Visits*

*Involving Energy Drinks: A Continuing Public Health Concern* (Jan. 10, 2013). The

majority of these visits were people between ages of 18 to 39. *Id.* Approximately 44

percent of non-alcoholic energy drink-related hospital visits happened when people

combined alcohol and/or drugs with energy drinks. *Id*. The increase in ED visits is

proportionate to an increase in sales of energy drinks.

23.     Although MONSTER began to disclose the caffeine content on its cans, as a

result of a lawsuit filed against them by the parents of a 14-year-old girl who died after

consuming energy drinks, MONSTER believed that "***the actual numbers are not***

***meaningful to most consumers.***" Energy Drinks Caffeine Levels Often Stray From Labels,

Study Shows, https://www.huffingtonpost.com/2012/10/25/energy-drink-caffeine-labels-

_n_2016314.html (last visited October 17, 2017).

24.     Marketed benefits of MONSTER BEVERAGES and RED BULL

ENERGY are achieved through addition of caffeine. Energy drinks have no therapeutic

benefit and many ingredients contained in such drinks are understudied and not regulated.

Pharmacology of contained agents combined with reports of toxicity raises concern for

potentially serious adverse effects associated with energy drinks consumption. Sara M.

Seifert, *et.al.*, *Health Effects of Energy Drinks on Children, Adolescent, and Young Adults*,

127[3]:511 PEDIATRICS, 2011 [hereinafter "PEDIATRICS"].

25.     "Most people can safely take in about 400 milligrams of caffeine daily or

about 4 cups of coffee." This Is How Much Caffeine It Takes to Kill an Average Person,

https://www.usatoday.com/story/news/nation-now/2017/05/16/south-carolina-teen-dies-

caffeine-how-much-coffee-can-kill-you/99975022/ (last visited October 11, 2017).

Caffeine intoxication and negative effects thereof are much more common when the daily

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

consumption increases to more than 500 milligrams. *Id*. **Mr. Omelin's daily caffeine intake was approximately 800-1040mg**.

26.     Food and Drug Administration's (FDA) caffeine limit per 12 fl oz of soda is 71mg (approximately 6mg per 1 fl oz). DRUG ALCOHOL DEPEND. at 2. The caffeine content in Red Bull 16oz can is 151mg (approximately 9mg per 1 fl oz ); Monster 16 oz. is 160mg (approximately 10mg per 1 fl oz), and NOS Energy's 24oz can is 240mg (approximately 10mg per 1 fl oz). All per oz caffeine contents in MONSTER and RED BULL's products exceed the allowed amount.

27.     In addition to pure caffeine, MONSTER BEVERAGES and RED BULL ENERGY, contain additional amounts of caffeine through additives, such as guarana. PEDIATRICS at 512. Each gram of guarana can contain 40 to 80 mg of caffeine, and has a potentially longer half-life. *Id*. Because the manufacturers are not required to post the amount of caffeine contained in these additives, the actual caffeine content in a single serving may exceed the listed amounts. Naren Gunja, *et.al., Energy Drinks: Health Risks and Toxicity*, MED J AUST, 196 (1): 46-49, (2012).

28.     The health risks associated with energy drinks are primarily related to high caffeine content. Studies have shown that a caffeine overdose can cause cardiovascular problems, nausea, vomiting, convulsions, and death. Breda João Joaquim, *et.al., Energy Drink Consumption in Europe: A Review of the Risks, Adverse Health Effects, and Policy Options to Respond*, FRONTIERS IN PUBLIC HEALTH, VOL. 2 at 2, 2014 [hereinafter "BREDA"].

29.     Since 2004, FDA reported a total of thirty-four (34) deaths that have been linked to energy drinks. Eleven (11) of these deaths have been linked to Monster. These

COMPLAINT FOR DAMAGES- 9
Case No. 3:17-cv-05837

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

deaths do not include other deaths that were reported in the media, such as a case of 16-year-old Lanna Hamman, who died on vacation after consuming several cans of Red Bull. Documents Link More Deaths To Energy Drinks, https://cspinet.org/news/documents-link-more-deaths-energy-drinks-20140625 (last visited October 1, 2007).

30.    A combination of excessive ingestion of caffeine- and taurine- containing energy drinks and strenuous physical activity can produce myocardial ischemia by inducing coronary vasospasm with potentially fatal results. "Both taurine and caffeine have been shown in vitro to have physiological effects on intracellular calcium concentration within vascular smooth muscle, and they could conceivably induce coronary vasospasm. " Adam J Berger, *et. al., Cardiac Arrest in a Young Man Following Excess Consumption of Caffeinated "Energy Drinks",* MJA, 190: 41 (2009) [hereinafter "BERGER"].

31.    National Federation of State High School Associations recommends that energy drinks not be used prior to, during or after physical activity. Furthermore, a common ingredient in energy drinks, guarana, is mentioned in the NCAA's 2016-17 banned drugs list. What That Energy Drink Can Do To Your Body, http://www.cnn.com/2017/04/26/health/energy-drinks-health-concerns-explainer/index.html (last visited October 17, 2017).

32.    In one of the cases, involving physical activity, a healthy 33-year-old man, Cory Terry, died after drinking a Red Bull shortly after playing basketball. Mr. Terry was an avid Red Bull drinker and had been consuming the beverage for many years. Death By Red Bull, https://www.caffeineinformer.com/death-by-red-bull (last visited October 13, 2017).

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

33.    A 28-year-old motocross rider had a cardiac arrest following a consumption of seven to eight (7-8) cans of energy drinks within seven hours. The man denied having any previous chest pains and was otherwise fit and well. BERGER at 42.

34.    Although sudden cardiac death in people under the age of forty are a result of structural heart disease, 10-20% of autopsies showed that the subject in that "age group had no obvious cardiac abnormalities on postmortem examination." BERGER at 42.

35.    Studies have shown that consumption of energy drinks causes life-threatening heart rhythm disorders, not found in coffee-drinkers. Mixing energy drinks with alcohol significantly increases negative side effects. Dr. Campbell: New Study Highlights Dangerous Effects of Energy Drinks, http://wncn.com/2017/05/07/dr-campbell-new-study-highlights-dangerous-effects-of-energy-drinks/ (last visited October 12, 2017).

36.    U.S. Center for Disease Control and Prevention warned against mixing energy drinks and alcohol, arguing energy drinks mask the depressant effects of alcohol. "When people mix energy drinks with alcohol, people drink more than they would if they had just consumed alcohol, which is associated with a cascade of problems,' says paper author Cecile Marczinski, associate professor of psychology at Northern Kentucky University." Why You Might Not Want To Mix Alcohol and Energy Drinks, http://time.com/3677044/alcohol-energy-drinks/ (last visited October 17, 2017).

37.    The Federal Institute for Risk Assessment reported that "energy drinks have led to adverse reactions including death in combination with alcohol and alone." Energy Drinks Safety Questioned by German agency, https://www.nutraingredients.com/Article/2008/06/05/Energy-drinks-safety-questioned-

by-German-agency (last visited October 17, 2017). In Sweden, two young people died after consuming Red Bull mixed with alcohol. *Id.*

38.     Mixing energy drinks with alcohol is a prominent practice among 71% of young adults.  BREDA at 2. A study of American college students found that "those who reported combining energy drinks with alcohol were more likely to experience adverse consequences due to their own drinking compared to those who only drank alcohol." *Id.* Energy drink consumers were more likely to have a higher breath alcohol concentration reading. *Id.*

39.     The National Poison Data System in United States recorded 4854 calls to emergency departments (0.2% of total calls) related to energy drinks over the year 2010-2011. 39.3% of these calls involved alcohol mixed energy drinks and led to more severe adverse effects. *Id.* at 3.

40.     Foreign countries took steps to limit the consumption of energy drinks or to ban it altogether. PEDIATRICS at 521. For example, Argentinian Senate proposed to ban energy drinks in nightclubs, and Finland requires a warning for drinks that contain more than 150mg/L of caffeine and a statement of maximum allowable daily intake. *Id.* France put a ban on taurine, an ingredient contained in MONSTER BEVERAGES and RED BULL ENERGY. Energy Drinks Safety Questioned by German agency, https://www.nutraingredients.com/Article/2008/06/05/Energy-drinks-safety-questioned-by-German-agency (last visited October 17, 2017). Denmark and Norway had banned or recommended banning energy drinks altogether. *Id.*

41.     Lack of adequate warnings as to consumption of energy drinks along with alcohol or prior to, during, and after physical activity results in consumption by consumers

who are unaware of the extent to which they are damaging their health. The present labeling of MONSTER BEVERAGES and RED BULL ENERGY does nothing to attempt to warn of these severe health risks.

42.     At all material times pertaining hereto, MONSTER and RED BULL manufactured, designed, and produced the MONSTER BEVERAGES and RED BULL ENERGY, respectively, before products reached the end consumer, Mr. Omelin, and from which he ultimately died.

43.     Despite well-known significant risks associated with consumption of energy drinks, including MONSTER BEVERAGES and RED BULL ENERGY, Defendants failed and continue to fail to alert consumers like Mr. Omelin of the significant health risks associated with consumption of MONSTER BEVERAGES and RED BULL ENERGY.

44.     By concentrating their marketing on potential benefits of MONSTER BEVERAGES and RED BULL ENERGY, Defendants completely failed to warn their consumers of the known risks and side effects of consuming their products, including the risks associated with mixing energy drinks with alcohol, consumption prior to, during, and after physical activities, and other severe health issues related to consumption of energy drinks.

45.     Beyond its failure to warn of or disclose to consumers information related to significant health risks associated with consuming their products, Defendants intentionally withheld, suppressed, and concealed from consumers information relating to the risks of adverse health effects upon consumption of MONSTER BEVERAGES and RED BULL ENERGY.

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

46.     Defendants failed to conduct adequate testing, studies or clinical testing and research, and similarly failed to conduct adequate marketing surveillance regarding the adverse effects associated with consumption of their product.

47.     Despite Defendants' representation to the contrary, MONSTER BEVERAGES and RED BULL ENERGY consumed by Mr. Omelin were not safe or fit for the use for which they were intended.

48.     Had the Defendants properly warned of and disclosed the significant risks associated with MONSTER BEVERAGES and RED BULL ENERGY, including the risks associated with mixing energy drinks with alcohol, physical activities, and other severe health issues related to consumption of energy drinks, Mr. Omelin would not have purchased and consumed MONSTER BEVERAGES and RED BULL ENERGY, or used them with caution.

49.     Defendants' failures in designing, manufacturing, marketing, distributing, warning and/or selling MONSTER BEVERAGES and RED BULL directly and proximately caused Mr. Omelin's death on October 30, 2014.

## IV. SURVIVAL ACTION CAUSES OF ACTION AGAINST ALL DEFENDANTS

### First Cause of Action
### Strict Liability – Design Defect
### (By Plaintiff Against All Defendants)

50.     Plaintiff re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

51.     At all material times pertaining hereto, Defendants, MONSTER and RED BULL manufactured, designed, and produced the MONSTER BEVERAGES and RED BULL ENERGY, respectively, before products reached the end consumer, Mr. Omelin.

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

Case 3:17-cv-05837-RJB   Document 1   Filed 10/18/17   Page 15 of 28

52.     Defendants, MONSTER and RED BULL, placed their respective products, MONSTER BEVERAGES and RED BULL ENERGY, in the stream of commerce, with expectation that it would reach an end consumer, such as Mr. Omelin, without substantial change in its condition. MONSTER BEVERAGES and RED BULL ENERGY, did reach Mr. Omelin. The subsequent consumption of the above-named products caused Mr. Omelin to vomit, lose consciousness, and his subsequent death.

53.     Mr. Omelin consumed the above-named products in a way contemplated by the Defendants, namely, by ingesting the products orally, causing his death.

54.     MONSTER BEVERAGES and RED BULL ENERGY consumed by Mr. Omelin, and that caused his death, did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

55.     At the time MONSTER BEVERAGES and RED BULL ENERGY, consumed by Mr. Omelin, left the Defendants' control, they were in a condition not contemplated by Mr. Omelin and was unreasonably dangerous and defective. At the time of Mr. Omelin's death and to this day, the above-mentioned products are dangerous to an extent beyond that which would be contemplated by the ordinary consumer in his or her position.

56.     Risks associated with consumption of MONSTER BEVERAGES AND RED BULL ENERGY outweigh any claimed or perceived benefit. There are, and there has been, other practicable, feasible and safer alternatives to achieve energy and increase awareness and productivity that do not present the severe and lethal health risks associated with MONSTER BEVERAGES and RED BULL ENERGY.

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

57.     The failure of MONSTER BEVERAGES and RED BULL ENERGY to

perform safely was a substantial factor in causing Mr. Omelin's death.

58.     As a direct and proximate result of MONSTER and RED BULL's design,

manufacture, marketing, and/or sale of their products, Plaintiff and Mr. Omelin, suffered

injuries and incurred damages herein described.

**Second Cause of Action**
**Strict Liability – Failure to Warn**
**(By Plaintiffs Against All Defendants)**

59.     Plaintiff re-alleges each and every allegation contained in this Complaint

with the same force and effect as if fully set forth herein.

60.     At all material times pertaining hereto, Defendants, MONSTER and RED

BULL manufactured, designed, and produced MONSTER BEVERAGES and RED BULL

ENERGY, respectively, before products reached the end consumer, Mr. Omelin.

61.     Defendants, MONSTER and RED BULL, placed their products,

MONSTER BEVERAGES and RED BULL ENERGY, respectively, in the stream of

commerce, with expectation that it would reach an end consumer, such as Mr. Omelin,

without substantial change in its condition. MONSTER BEVERAGES and RED BULL

ENERGY, did reach Mr. Omelin and caused his death.

62.     At all times, at and after the time of design, manufacture, marketing,

distribution and/or sale of the product(s) consumed by Mr. Omelin, MONSTER and RED

BULL knew or should have known that their products had potential risks and side effects.

Such scientific knowledge was readily available to MONSTER and RED BULL.

Defendants knew or should have known of the defective condition, characteristics, and

risks associated with their products, as previously set forth herein.

63.     The potential risks and side effects associated with the MONSTER

BEVERAGES and RED BULL ENERGY presented, and continues to present, a substantial hazard when used or misused in an intended and reasonably foreseeable way (i.e. oral consumption).

64. The potential risks and side effects associated with consumption of MONSTER BEVERAGES and RED BULL ENERGY, were not recognizable by ordinary consumers, such as Mr. Omelin.

65. When placing their respective products, MONSTER BEVERAGES and RED BULL ENERGY into the stream of commerce, MONSTER and RED BULL failed to provide adequate warnings as to the risks associated with their respective products. MONSTER and RED BULL failed to properly warn consumers of the true risks and dangers, and of all symptoms, scope and severity of the potential side effects of MONSTER BEVERAGES and RED BULL ENERGY, respectively, that Mr. Omelin ingested, such as incomparability with alcoholic beverages and consumption prior to, during, and after physical activity.

66. MONSTER and RED BULL failed to adequately warn and instruct of the potential risks and side effects associated with their products' consumption by:

    a) Providing insufficient warnings to alert Mr. Omelin and other consumers of the significant risk, scope, duration and severity of adverse effects and/or reactions associated with MONSTER BEVERAGES and RED BULL ENERGY, subjecting Mr. Omelin to risks that by far exceeded the implied benefits of MONSTER BEVERAGES and RED BULL ENERGY; and

    b) Misleading consumers, and Mr. Omelin, through deceptive marketing materials emphasizing the efficacy of the drinks while downplaying the

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

risks associated with products, thereby making the use of MONSTER

BEVERAGES and RED BULL ENERGY more dangerous than any

consumer, and Mr. Omelin, would reasonably expect.

67.     The lack of sufficient warnings or instructions was a substantial factor in

causing Mr. Omelin's death.

68.     As a direct and proximate result of MONSTER and RED BULL's failure to

provide adequate warnings in connection with its design, manufacture, marketing, and/or

sale of MONSTER BEVERAGES and RED BULL drinks, Plaintiff and Mr. Omelin,

suffered injuries and incurred damages herein described.

**Third Cause of Action**
**Negligence – Design, Manufacture and Sale**
**(By Plaintiffs Against All Defendants)**

69.     Plaintiff re-alleges each and every allegation contained in this Complaint

with the same force and effect as if fully set forth herein.

70.     MONSTER and RED BULL owed a duty to Mr. Omelin and all consumers

of their products to exercise a reasonable care in the design, formulation, testing,

manufacturing, labeling, marketing, distribution, promotion and/or sale of MONSTER

BEVERAGES and RED BULL ENERGY, respectively. Under this duty, Defendants were

required to ensure that their products did not pose an unreasonable risk of bodily harm to

Mr. Omelin and all other consumers, and to warn of side effects, risks, dangers and

potential for serious bodily harm associated with consumption of MONSTER

BEVERAGES and RED BULL ENERGY.

71.     MONSTER and RED BULL failed to exercise reasonable care in the

design, formulation, testing, manufacturing, labeling, marketing, distribution, promotion

and/or sale of MONSTER BEVERAGES and RED BULL ENERGY while they knew or

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

should have known that their products could cause significant bodily harm and were not safe for intended use by consumers, like Mr. Omelin.

72.     MONSTER and RED BULL were negligent in the design, formulation, testing, manufacturing, labeling, marketing, distribution, promotion, and/or sale of MONSTER BEVERAGES and RED BULL ENERGY and breached their duties to the Plaintiff and Mr. Omelin. Specifically, MONSTER and RED BULL:

a)  Failed to use due care in the preparation and design of their products to prevent the risk associated with their consumption;

b)  Failed to conduct adequate testing of their products to prevent the risks associated with their consumption;

c)  Failed to cease manufacturing or otherwise alter the composition of their products to produce a safer alternative despite the fact that they knew or should have known that original composition posed a serious risk of bodily harm to consumers;

d)  Failed to conduct post-marketing surveillance to determine the safety of their products;

e)  Failed to exercise reasonable care with respect to post-sale warnings and instructions for safe use by consumers; and

f)  Were otherwise careless and negligent.

73.     At all relevant times, it was foreseeable to MONSTER and RED BULL that consumers, like Mr. Omelin, would suffer injury as a result of their failure to exercise ordinary care.

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

74.     As a direct and proximate result of MONSTER and RED BULL's

negligence in design, manufacture, and sale of their products, Plaintiff and Mr. Omelin,

suffered injuries and incurred damages herein described.

**Fourth Cause of Action**
**Negligence – Failure to Warn**
**(By Plaintiffs Against All Defendants)**

75.     Plaintiff re-alleges each and every allegation contained in this Complaint

with the same force and effect as if fully set forth herein.

76.     Prior to, on, and after the date of Mr. Omelin's consumption of MONSTER

BEVERAGES and RED BULL ENERGY, MONSTER and RED BULL engaged in the

design, formulation, testing, manufacturing, labeling, marketing, distribution, promotion,

advertising, and/or sale of MONSTER BEVERAGES and RED BULL ENERGY, which

were intended for consumption by consumers like Mr. Omelin.

77.     Prior to, on, and after the date of Mr. Omelin's consumption of MONSTER

BEVERAGES and RED BULL ENERGY, MONSTER and RED BULL knew or should

have known that their respective products were dangerous or were likely to be dangerous

when used in a reasonably foreseeable manner. The risks included, but were not limited to,

increased chance for cardiovascular problems, nausea, vomiting, convulsions, and death.

78.     Prior to, on, and after the date of Mr. Omelin's consumption of MONSTER

BEVERAGES and RED BULL ENERGY, MONSTER and RED BULL knew or should

have known that consumers of MONSTER BEVERAGES and RED BULL ENERGY,

including Mr. Omelin, would not realize the dangers presented by the product.

79.     Prior to, on, and after the date of Mr. Omelin's consumption of MONSTER

BEVERAGES and RED BULL ENERGY, MONSTER and RED BULL failed to

adequately warn of the dangers associated with consumption of their products and/or failed

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

to adequately instruct consumers on the safe use of the product. Such failures included, but where not limited to:

    a) Failing to issue adequate warnings to consumers concerning the risks of serious bodily harm associated with the consumption of their products;

    b) Failing to supply adequate warnings regarding all potential adverse health effects associated with the use of their products and the comparative severity of these side effects;

    c) Failing to provide adequate warnings to caution and/or restrict the use/mixing/ingestion of their products with alcohol; and

    d) Failing to provide adequate warnings to caution and/or restrict the use of their products prior to, during, and after physical activity.

80.    At all times prior to, on, and after the date of Mr. Omelin's death, it was foreseeable to MONSTER and RED BULL that consumers, including Mr. Omelin, might suffer injury as a result of their failure to exercise ordinary care in providing adequate warnings concerning the dangers associated with consumption of MONSTER BEVERAGES and RED BULL ENERGY.

81.    As a direct and proximate result of MONSTER and RED BULL's negligent failure to warn of existing risks associated with their products, Plaintiff and Mr. Omelin, suffered injuries and incurred damages herein described.

### Fifth Cause of Action
### Fraud – Concealment, Suppression or Omission of Material Facts
### (By Plaintiffs Against All Defendants)

82.    Plaintiff re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

COMPLAINT FOR DAMAGES- 21
Case No. 3:17-cv-05837

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

83.     MONSTER and RED BULL withheld and suppressed facts in their advertising, labeling, packaging, marketing and promotion of MONSTER BEVERAGES and RED BULL ENERGY, respectively, that led consumers, and Mr. Omelin, to falsely believe that the products posed no greater risk to the health of its consumers than did natural supplements containing similar ingredients.

84.     Due to the potential risks associated with consumption of MONSTER BEVERAGES and RED BULL ENERGY, MONSTER and RED BULL owed a duty to disclose the truth about the significant adverse health risks associated with the consumption of their respective products, but failed to do so.

85.     MONSTER and RED BULL knew of potential health risks associated with consumption of MONSTER BEVERAGES and RED BULL ENERGY, respectively, which were caused by high amount of caffeine and caffeine's interaction with other active ingredients and alcohol, yet both, MONSTER and RED BULL took steps in advertising, labeling, packaging, marketing and promotion of MONSTER BEVERAGES and RED BULL ENERGY to conceal such facts to prevent consumers from learning about the risks arising out of consumption of their respective products.

86.     The concealment of the risks associated with advertising, labeling, packaging, marketing and promotion of MONSTER BEVERAGES and RED BULL ENERGY was done with the intent to induce consumers, and Mr. Omelin, to purchase and consume MONSTER and RED BULL's products. MONSTER and RED BULL intended for their consumers, and Mr. Omelin, to rely on advertising, labeling, packaging, marketing and promotion of MONSTER BEVERAGES and RED BULL ENERGY, as well as their suppression of the true facts about the risks and dangers associated with

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

consumption of their products.

87.     The reliance by Mr. Omelin on the safety of MONSTER BEVERAGES and

RED BULL ENERGY was justified and reasonable in that MONSTER and RED BULL

appeared to be, and represented themselves to be, reputable companies that would not fail

to disclose the truth about any potential harmful health effects of consuming their products.

88.     As a direct and proximate result of MONSTER and RED BULL's fraud and

deceit Plaintiff and Mr. Omelin, suffered injuries and incurred damages herein described.

**Sixth Cause of Action**
**Breach of Implied Warranties**
**(By Plaintiffs Against All Defendants)**

89.     Plaintiff re-alleges each and every allegation contained in this Complaint

with the same force and effect as if fully set forth herein.

90.     Prior to and on the day of his death on October 30, 2014, Mr. Omelin

purchased and consumed regularly MONSTER BEVERAGES and RED BULL ENERGY

for at least four (4) years.

91.     Within 24 hours prior to his death, Mr. Omelin consumed at least four (4)

16-oz cans of MONSTER BEVERAGES and RED BULL ENERGY, manufactured by

MONSTER and RED BULL, respectively, causing his death in the early morning hours of

October 30, 2014.

92.     At all times prior to and at the time of Mr. Omelin's death, MONSTER and

RED BULL were in the business of selling MONSTER BEVERAGES and RED BULL

ENERGY, respectfully.

93.     Energy drinks consumed by Mr. Omelin prior to his death were harmful at

the time of consumption.

94.     The harmful conditions of MONSTER BEVERAGES and RED BULL

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

ENERGY, which ultimately lead to Mr. Omelin's death, could not reasonably been expected by an average consumer.

95.     The harmful conditions of MONSTER BEVERAGES and RED BULL ENERGY were a substantial factor in bringing about conditions that ultimately caused Mr. Omelin's death.

96.     Prior to Mr. Omelin's consumption of MONSTER BEVERAGES and RED BULL ENERGY, MONSTER and RED BULL warranted to Mr. Omelin and other similarly situated consumers that their products were of merchantable quality and safe and fit for the use for which it was intended, i.e. to promote stamina and energy.

97.      Mr. Omelin relied entirely on the expertise, knowledge, skill, judgment, and implied warranty of MONSTER and RED BULL in choosing to consume MONSTER BEVERAGES and RED BULL ENERGY.

98.     MONSTER BEVERAGES and RED BULL ENERGY consumed by Mr. Omelin were neither safe for their intended use, nor of merchantable quality, in that they possessed a dangerous mixture of ingredients that, when put to its intended use, caused severe and fatal injuries to Mr. Omelin.

99.     By selling, delivering and/or distributing defective products to Mr. Omelin, MONSTER and RED BULL breached its implied warranty of merchantability and the implied warranty of fitness.

100.    As a direct and proximate result of MONSTER and RED BULL's breach of the implied warranty of merchantability and the implied warranty of fitness, Plaintiff and Mr. Omelin, suffered injuries and incurred damages herein described.

### V. PUNITIVE DAMAGES ALLEGATIONS
**(By Plaintiff Against All Defendants)**

COMPLAINT FOR DAMAGES- 24
Case No. 3:17-cv-05837

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

101.    Plaintiff re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

102.    At all pertinent times, MONSTER and RED BULL knew that their products contained dangerous levels of caffeine and other ingredients, and knew the serious health risks to consumers associated with consumption of their products.

103.    With such knowledge and in furtherance of their own financial interests, MONSTER and RED BULL willfully, wantonly and maliciously engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of MONSTER BEVERAGES and RED BULL ENERGY while simultaneously failing to warn potential consumers of its dangerous propensities.

104.    With such knowledge and in furtherance of their own financial interests, MONSTER and RED BULL willfully, wantonly and maliciously, and with conscious disregard for, and indifference to, the health and safety of consumers, including Mr. Omelin, failed and refused to supply adequate warnings and/or information to protect consumers and/or otherwise reduce and eliminate the health risks to consumers associated with the consumption of MONSTER BEVERAGES and RED BULL ENERGY.

105.    As a direct and proximate result of MONSTER and RED BULL's conduct, and because their acts and omissions were willful, wanton, malicious, intended and in conscious disregard for, and indifference to, the health and safety of potential consumers, like Mr. Omelin, an award of exemplary or punitive damages is appropriate and necessary to punish MONSTER and RED BULL, and to deter them from engaging in such misconduct in the future and to affect significant change in the way MONSTER and RED

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

BULL design, manufacture, market, promote, warn about, distribute and/or sell their products.

## VI. WRONGFUL DEATH CAUSE OF ACTION
### Seventh Cause of Action
### Wrongful Death
### (By Plaintiff Against All Defendants)

106.    Plaintiff re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

107.    Anna Omelin and all other surviving distributees of and successors in interest to Mr. Omelin do hereby bring any and all Wrongful Death causes of action pursuant to Revised Code of Washington § 4.20.

108.    Defendants' wrongful actions described herein, and the defects in MONSTER BEVERAGES and RED BULL ENERGY product design, manufacture, marketing, distribution and/or sale caused the death of Plaintiff's husband, Mr. Omelin. As a direct and proximate result of the strict liability, negligence, fraud, and breach of warranty described above, Mr. Omelin purchased and consumed MONSTER BEVERAGES and RED BULL ENERGY, which ultimately resulted in his death.

109.    As a result of Mr. Omelin's death, his wife, the Plaintiff, was deprived of the love, companionship, comfort, affection, support, and society of Mr. Omelin.

110.    As a result of Mr. Omelin's death, his two children and a stepchild were deprived of the love, companionship, comfort, affection, support, and society of Mr. Omelin.

111.    Plaintiff is entitled to recover economic and non-economic damages against MONSTER and RED BULL for the wrongful death proximately caused by Mr. Omelin's consumption of MONSTER BEVERAGES and RED BULL ENERGY and directly

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

attributable to MONSTER and RED BULL's failures as described herein.

## VII. JURY DEMAND

112. Plaintiff requests a 12-person jury to hear this matter.

## VIII. PRAYER FOR RELIEF AS TO ALL CLAIMS

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants, jointly and severally, including:

1. General damages for the physical pain and suffering, mental and emotional distress, anguish, anxiety, impairment of earning capacity, loss of services, including loss of love, affection, care, companionship, society and consortium, loss of enjoyment of life and all such other damages as are just and recoverable as general damages for the death of Mr. Omelin;

2. Special damages in an amount to be proven at the time of trial for for destroyed earning capacity of Mr. Omelin occasioned by his death and loss of lifetime earnings, and all other such recoverable special damages as are just arising from the injuries to each of Anna Omelin, A.S, a minor, A.O., a minor, and A.O., a minor;

3. Special damages in an amount to be proven at the time of trial for net economic loss to the Estate of Mr. Omelin and/or loss of support of all beneficiaries of the Estate of Mr. Omelin occasioned by the wrongful death of Mr. Omelin;

4. General damages for the pain and suffering occasioning by the death of Mr. Omelin, including his knowledge and awareness of impending doom;

5. As to the Fifth Cause of Action against all Defendants, Plaintiff as surviving spouse and successor in interest to Mr. Omelin, prays for punitive or exemplary damages in an amount to be determined at trial;

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429

1    6. Funeral and burial expenses relating to Mr. Omelin;

2    7. All other general and special damages recoverable under Washington state law

3    or any other applicable law;

4    8. Pre and post-judgment interest;

5    9. Costs, including reasonable attorney fees as allowed by law; and

6    10. Such other further relief that the Court may deem just and equitable.

7

8

9    Respectfully submitted this on 18th day of October, 2017.

10

11              By: s/Olga Efimova
                Olga Efimova, WSBA #52498
12              Cosmopolitan Legal, PLLC
                151 108th Ave NE, Unit 210
13              Bellevue, WA 98004
                Telephone: (425) 296-8868
14              Fax: (877) 230-2429
                E-mail: olgae@cosmopolitanlegal.com
15              Attorney for Plaintiff Anna Omelin

16

17

18

19

20

21

22

23

24

25

26

27

COSMOPOLITAN LEGAL, PLLC
151 108th Ave NE, Unit 210
Bellevue, WA 98004
Phone: (425)296-8868 | Fax: (877)230-2429